Larry W. SHOAF, Plaintiff,

v.

**KIMBERLY–CLARK CORPORATION,**
Defendant.

No. CIV 1:02CV00724.

United States District Court,
M.D. North Carolina.

Nov. 25, 2003.

B. Ervin Brown, II, Handler & Brown, P.L.L.C., Winston–Salem, NC, for plaintiff.

Jill Stricklin Cox, Constangy Brooks and Smith, LLC, Winston–Salem, NC, Powell

Goldstein Frazer & Murphy, LLP, Atlanta, GA, for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On September 3, 2002, Larry W. Shoaf ("Plaintiff") filed this employment discrimination action against Kimberly–Clark Corporation ("Defendant"). Plaintiff's complaint alleges two bases for relief: (1) retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and (2) wrongful termination in violation of the common law of North Carolina.

Before the court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on July 25, 2003. Any response by Plaintiff was due thirty days thereafter. Local Rule 56.1(d). On September 2, 2003, after the time for filing a response had expired, Plaintiff's counsel filed a motion to extend time, stating that he had conferred with counsel for Defendant and that Defendant had consented to the extension. However, extensions are not allowed after the expiration of the specified time except upon a showing of excusable neglect. The only grounds cited in Plaintiff's untimely motion for extension of time are "conflicts with trials in the General Court of Justice of the State of North Carolina, as well as previously scheduled briefing dates in federal and state courts." This does not constitute excusable neglect.

Defendant filed a response to Plaintiff's motion on September 9, 2003, and attached the sworn affidavit of both attorneys of record for Defendant stating that they had not been served with Plaintiff's motion for extension of time and that neither Plaintiff's counsel nor anyone in his office had contacted them seeking an extension, and that they therefore had not consented to it. On September 15, 2003, Plaintiff filed his brief in opposition to Defendant's motion for summary judgment, which failed to comply with the rules of this court limiting such briefs to a maximum of twenty pages. Local Rule 7.3(d). On October 2, 2003, Defendant filed a motion to strike Plaintiff's non-conforming brief and a separate motion to strike "Exhibit B" to the same brief. Plaintiff has failed to respond to any of Defendant's motions, including Defendant's counsels' affidavits, or to offer an explanation for the apparent misstatement of Defendant's counsels' consent to Plaintiff's motion for an extension of time.

In the usual case the court would look favorably upon timely motions to extend time if justice so required and not penalize parties and counsel for insubstantial violations of the Local Rules or the Federal Rules of Civil Procedure. However, this is not the usual case. Not only did Plaintiff fail to file a timely response to Defendant's motion for summary judgment, but did not even seek an extension until time had expired without showing grounds for excusable neglect and then misrepresented that consent of Defendant's counsel had been obtained. When a response was ultimately filed, it did not conform to the rules of this court.

Local Rule 7.3(k) provides that failure to file a brief or response within the time specified shall constitute a waiver of the right to file a brief or response except upon a showing of excusable neglect, and that such failure to file will ordinarily result in the motion being considered as uncontested and granted without further notice. For the reasons set out above, substantial grounds exist for granting Defendant's motion for summary judgment as uncontested. The court will therefore strike Plaintiff's untimely and non-conforming response and grant Defendant's motion for summary judgment. In the alternative, and in the interests of justice, the court will also consider Defendant's

motion on the merits, including Plaintiff's untimely and non-conforming response. Even so, after a careful review of the entire record in the case, Defendant's motion for summary judgment will be granted.

## FACTS

Defendant employed Plaintiff from February of 1990 until October 18, 2001, at Defendant's textile mill in Lexington, North Carolina ("Lexington Mill"). At the time Defendant hired Plaintiff, Plaintiff agreed to safeguard Defendant's trade secrets and to keep information about Defendant's business practices confidential by signing Defendant's Confidential Information and Business Ideas, Inventions and Development Agreement ("Confidentiality Agreement").[1] The Confidentiality Agreement remained in effect at all times during Plaintiff's employment relationship with Defendant.

During Plaintiff's employment at the Lexington Mill, Defendant distributed two other written employment policies to its employees that prohibited unauthorized or improper disclosure of confidential business information. First, Defendant published a Code of Conduct at the Lexington Mill to explain to its employees their obligation to maintain the confidentiality of Defendant's business information. (Mem. Supp. Def.'s Mot. for Summ. J., Ex. C (Kline Aff. at ¶ 4).)[2] In addition to describing proper ways to use and handle

1. Defendant's Confidentiality Agreement provides as follows, in pertinent part:

As a condition to my employment and continuing employment with Kimberly–Clark Corporation ("the Corporation"), I agree that:

1. Trade secrets and confidential information about the Corporation's business which may be disclosed to me or of which I may learn in the course of my employment are not to be disclosed; one of my important duties as an employee, and even after my employment terminates is to use my best efforts to safeguard the Corporation's trade secrets and to keep information about the Corporation confidential. I will not disclose any of the Corporation's trade secrets or any confidential information about the Corporation until I have express authorization to do so. I will assume any particular information about the Corporation's business is confidential until I am informed it is not or until it has been published or is generally or publicly known outside the Corporation or (in the case of information about processes, procedures, machinery and equipment) until it has been recognized as standard practice outside of the corporation.

(Memo. Supp. Def.'s Mot. for Summ. J., Ex. B.) Plaintiff signed Defendant's Confidentiality Agreement prior to starting work at the Lexington Mill on February 29, 1990. (*Id.,* Ex. A (Pl.'s May 2, 2003, Dep. at 41).)

2. Defendant's Code of Conduct provides as follows, in pertinent part:

CONFIDENTIAL INFORMATION
In the course of our work, many of us have access to confidential information, including business plans, financial information, patents, product development, and personnel and salary information. . . .
Disclosure of confidential information outside the company, especially to competitors, could be harmful to us. Consequently, confidential information should be maintained in locked files and storage areas and properly disposed of in accordance with our records retention policy. . . .
USE OF CONFIDENTIAL INFORMATION
We all have an obligation to use the confidential information that we possess only in connection with our job responsibilities. . . .
CONFIDENTIALITY AGREEMENT
On first joining Kimberly–Clark, each of us was asked to sign a "Confidential Information and Business Ideas, Inventions and Developments Agreement." That agreement obligates us . . . to protect the company's trade secrets and to keep information confidential. . . .
In addition, the Confidentiality Agreement obligates each of us, even if we leave the Company, not to disclose or misuse any confidential information acquired while employed by Kimberly–Clark.

(Memo. Supp. Def.'s Mot. for Summ. J., Ex. D.)

Defendant's confidential business information, the Code of Conduct reminded all employees at the Lexington Mill that the Confidentiality Agreement obligated them to keep Defendant's business information confidential. (*Id.*, Ex. C (Kline Aff., Ex. 1).)

Second, Defendant published the Employee/Contractor/Visitor Conduct Mill Practices Guidelines ("Mill Guidelines") to its employees at the Lexington Mill on February 16, 2001.[3] The Mill Guidelines "define[d] the general expectations of employee or visitor conduct while working in the Lexington Mill or while representing Kimberly–Clark as an employee while away from the mill." (*Id.*, Ex. E (Kline Aff., Ex. 2).) The Mill Guidelines instructed employees at the Lexington Mill to use "*[s]ound moral, legal and ethical judgment ... during the course of conducting business as stated in the Kimberly–Clark 'Code of Conduct' booklet provided to each employee.*" (*Id.*) (emphasis in original). The Mill Guidelines also warned employees at the Lexington Mill that "*[v]iolations of the Basic Rules of Conduct are considered to be unacceptable under any circumstance and will result in disciplinary action up to immediate termination.*" (*Id.*) (emphasis in original).

In 1995, Defendant assigned Plaintiff to work on the same employment team as William Stout. Plaintiff worked with Stout until Defendant discharged Stout on December 6, 1999. On December 21, 2000, Stout filed suit against Defendant alleging reverse racial discrimination and retaliatory discharge in violation of Title VII and wrongful termination in violation of North Carolina common law. *See generally Stout v. Kimberly Clark Corp.*, 201 F.Supp.2d 593 (M.D.N.C.2002). A portion of the events surrounding Stout's discharge and lawsuit against Defendant are the basis for the dispute between Plaintiff and Defendant presently before the court.

On October 2, 2001, Stout gave a deposition in connection with his lawsuit against Defendant. During his deposition, Stout testified that in April of 2001, Plaintiff voluntarily provided him with an audiotape recording of conversations between Plaintiff and Plaintiff's supervisors, Dan Heaton and Kenneth Kline. (Mem. Supp. Def.'s Mot. for Summ. J., Ex. F (Stout Dep. at 20–21).) According to Stout, the conversation between Plaintiff and Heaton dealt with personnel matters and past disciplinary actions taken against an African American employee at the Lexington Mill. (*Id.* (Stout Dep. at 21–25).) The conversation between Plaintiff and Kline concerned how extensively Defendant investigated safety violations and accidents caused by other employees at the Lexington Mill. (*Id.*, Ex.

**3.** The Mill Guidelines provide as follows, in pertinent part:

These guidelines are designed to keep our mill a safe, productive and desirable place to work and to help us assure a fair and consistent administration of disciplinary action should it be necessary. *These guidelines are not all inclusive.* Sound moral, legal and ethical judgment is always expected by each employee during the course of conducting business as stated in the Kimberly–Clark "Code of Conduct" booklet provided to each employee.

. . . . .

*Violations of the Basic Rules of Conduct are considered unacceptable under any circum-*

*stance and will result in disciplinary action up to immediate termination. [The following] list is not inclusive of all types of employee misconduct.*

. . . . .

*Intentional destruction, defacing, stealing or attempted theft of company or employee property.*

. . . . .

*Using personal appliances such as radio, TV, cell phone, microwave, etc ... in the mill* . . . .

(Mem. Supp. Def.'s Mot. for Summ. J., Ex. C (Kline Aff. Ex. 2); *id.* at Ex. E) (emphasis in original).

A (Pl.'s May 2, 2003, Dep. at 80–102).) Stout testified that he never asked Plaintiff to record his conversations with Heaton and Kline and that he never expected Plaintiff would give him an audiotape recording of those conversations. (*Id.*, Ex. F (Stout Dep. at 22–23).)

Stout further testified that in July of 2001 Plaintiff provided him with copies of several documents from the Lexington Mill containing personnel information. (*Id.* (Stout Dep. at 29).) Stout stated that Plaintiff voluntarily provided him with copies of documented safety violations and other accidents caused by employees at the Lexington Mill. (*Id.* (Stout Dep. at 26–29).) Stout also stated that Plaintiff had given him a copy of Defendant's written policy on chain e-mails as well as several chain e-mails regarding that policy. (*Id.* (Stout Dep. at 31).) During his deposition, Stout confirmed that he never requested Plaintiff to provide him with any confidential documents from the Lexington Mill. (*Id.* (Stout Dep. at 29–31).)

On October 16, 2001, Stout deposed several of Defendant's Lexington Mill employees in connection with his lawsuit against Defendant. Plaintiff and four other employees testified that Defendant treated Stout unfairly and unlawfully terminated Stout from his employment at the Lexington Mill. Plaintiff testified that Defendant established an affirmative action plan at the Lexington Mill and that Defendant implemented specific hiring quotas for women and minorities. (Pl.'s Compl., Ex. A (Pl.'s Oct. 16, 2001, Dep. at 29–30).) Plaintiff also testified that Defendant subjected Stout and other white employees at the Lexington Mill to more severe disciplinary action than similarly situated African American employees. (*Id.* (Pl.'s Oct. 16, 2001, Dep. at 34–40).)

In his deposition, Plaintiff denied giving Stout any confidential personnel documents from the Lexington Mill. (Mem. Supp. Def.'s Mot. for Summ. J., Ex. H (Pl.'s Oct. 16, 2001, Dep. at 67); Pl.'s Compl., Ex. A (Pl.'s Oct. 16, 2001, Dep. at 67).) However, Plaintiff admitted that he had secretly tape recorded his conversations with Heaton and Kline concerning confidential personnel matters and disciplinary actions taken against other employees at the Lexington Mill. (Mem. Supp. Def.'s Mot. for Summ. J., Ex. H (Pl.'s Oct. 16, 2001, Dep. at 70–74); Pl.'s Compl., Ex. A (Pl.'s Oct. 16, 2001, Dep. at 70–74).) Plaintiff also admitted that he had voluntarily given Stout an audiotape recording of both conversations because Plaintiff "felt it might be information that [Stout] could use." (Mem. Supp. Def.'s Mot. for Summ. J., Ex. H (Pl.'s Oct. 16, 2001, Dep. at 71); Pl.'s Compl., Ex. A (Pl.'s Oct. 16, 2001, Dep. at 71).)

On October 18, 2001, several of Defendant's managers at the Lexington Mill held a staff meeting to discuss Plaintiff's admission during his deposition that he had provided an audiotape recording to Stout containing confidential business information. (Mem. Supp. Def.'s Mot. for Summ. J., Ex. C (Kline Aff., Ex. 3).) During their staff meeting, the Lexington Mill managers also discussed Stout's deposition testimony that Plaintiff had provided him with other confidential personnel documents. (*Id.*) At the close of their meeting, the Lexington Mill managers voted unanimously to terminate Plaintiff based on the seriousness of Plaintiff's violation of Defendant's employment policies and Plaintiff's intent to do harm to Defendant. (*Id.*)

When Plaintiff arrived at work on the evening of October 18, Heaton and Kline notified Plaintiff of Defendant's decision to terminate Plaintiff's employment. Kline explained Defendant's decision to Plaintiff with the following statement: "It has become clear that you have violated the Confidentiality Agreement you signed back in

1990 upon your start of employment. As a result of this violation, and in keeping with the terms of this agreement, your employment with Kimberly–Clark Corporation is terminated effective immediately." (*Id.*) Plaintiff asked Kline what he had done to violate the Confidentiality Agreement, but Kline refused to give Plaintiff any further explanation. (Mem. Supp. Def.'s Mot. for Summ. J., Ex. A (Pl.'s May 2, 2003, Dep. at 115–16).)

Following his termination, Plaintiff filed a charge of employment discrimination against Defendant with the Equal Employment Opportunity Commission (the "EEOC"). On July 22, 2002, the EEOC dismissed Plaintiff's charges against Defendant and issued Plaintiff a right-to-sue letter. On September 3, 2002, Plaintiff filed this action against Defendant alleging retaliatory discharge in violation of Title VII and wrongful termination in violation of the common law of North Carolina.

DISCUSSION

Summary judgment must be granted when the pleadings, responses to discovery, and the record show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on all relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications. Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment may simply argue the absence of evidence by which the non-moving party can prove her case). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might

return a verdict in his [or her] favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is proper only when there are no genuine issues presented for trial and the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp. Ltd.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering the evidence, all reasonable inferences must be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

A. Plaintiff's Title VII Claim

In his "Second Cause of Action," Plaintiff alleges retaliatory discharge in violation of Title VII. Title VII makes it unlawful for an employer to discriminate against any employee in retaliation for either participating in a Title VII proceeding or opposing an employer's discriminatory practices. *See* 42 U.S.C. § 2000e–3(a). "Under Title VII, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination by raising an inference that the defendant acted with discriminatory intent." *Karpel v. Inova Health System Servs.,* 134 F.3d 1222, 1227 (4th Cir.1998) (citing *Wileman v. Frank,* 979 F.2d 30, 33 (4th Cir.1992)).

Where a plaintiff cannot produce direct evidence of an employer's discriminatory intent, the plaintiff may prove his case with circumstantial evidence under the burden-shifting scheme of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973). In the instant case, Plaintiff has presented no direct evidence of discriminatory intent on the part of Defendant. Therefore, Plaintiff must rely on the *McDonnell Douglas* framework to establish his cause of action for retaliatory discharge and to survive summary judgment. *See Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir.2000) ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII.").

Under *McDonnell Douglas,* the initial burden falls on the plaintiff to demonstrate a *prima facie* case of retaliatory discharge. *See Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir.1997). If the plaintiff satisfies this initial burden, then a presumption of discrimination arises, and the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its adverse employment action. *Id.* If the employer satisfies its burden of production, then "the presumption of discrimination that arose from the *prima facie* case disappears, and the burden of proof is left with the plaintiff to show that the employer acted with a discriminatory intent and that its proffered explanation was a pretext for discrimination." *McNeil v. Scotland County,* 213 F.Supp.2d 559, 566 (M.D.N.C.2002) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■ In order to establish a *prima facie* case of retaliation, Plaintiff must prove three elements by a preponderance of the evidence: (1) he engaged in a protected activity; (2) his employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse employment action. *Causey v. Balog,* 162 F.3d 795, 803 (4th Cir.1998). Defendant does not dispute that it took adverse employment action against Plaintiff by terminat-ing Plaintiff's employment at the Lexington Mill. Therefore, the court finds that Plaintiff has satisfied the second element of his *prima facie* case. *See Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 775 (4th Cir.1997) (noting that termination is an adverse employment action).

■ Protected activities fall into two distinct categories under Title VII's anti-retaliation provision: (1) opposition to an employer's discriminatory employment practices; or (2) participation in an ongoing investigation or proceeding conducted pursuant to Title VII. Under the opposition clause, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e–3(a). To qualify for protection under the opposition clause, an employee's behavior need not rise to the level of formal charges of discrimination against his employer. *Armstrong v. Index Journal Co.,* 647 F.2d 441, 448 (4th Cir.1981). Protected activity under the opposition clause includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 259 (4th Cir.1998) (citing *Armstrong,* 647 F.2d at 448). To determine whether an employee has engaged in legitimate opposition activity, courts traditionally " 'balance the purpose of [Title VII] to protect persons engaging reasonably in activities opposing … discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.' " *Armstrong,* 647 F.2d at 448 (quoting *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 231 (1st Cir.1976)).

Defendant relies heavily on *Laughlin v. Metropolitan Washington Airports Authority*, 149 F.3d 253 (4th Cir.1998), for the proposition that Title VII does not protect employees like Plaintiff who violate their duty of confidentiality by providing confidential personnel information to outside third parties. In *Laughlin*, the Metropolitan Airports Authority ("Metro") discharged Laughlin after Laughlin admitted during a deposition that she had taken confidential personnel documents from her supervisor's desk and provided those documents to a former employee who later filed an employment discrimination suit against Metro. *Id.* at 256–57. The *Laughlin* court concluded that Metro's interest in maintaining the security and confidentiality of sensitive personnel documents outweighed Laughlin's interest in providing those documents to the former employee. *Id.* at 260. In reaching its conclusion in *Laughlin*, the Fourth Circuit explained that while some opposition activities merit protection under the opposition clause, "Laughlin's drastic actions [were] not akin to the measured responses to employer discrimination that we have approved in the past." *Id.*

■ The court finds no distinction between Plaintiff's disclosure of confidential information in the instant case and the disclosure of confidential information in *Laughlin* that the Fourth Circuit described as "disproportionate and unreasonable under the circumstances." *Id.* Even if Plaintiff did not provide any confidential documents to Stout, Plaintiff admittedly provided Stout with an audiotape containing conversations with members of Defendant's management team about personnel matters and disciplinary actions taken against other employees at the Lexington Mill. By sharing this confidential and sensitive information with Stout, Plaintiff not only violated the Code of Conduct and Mill Guidelines, but also breached his Confidentiality Agreement and fiduciary duties of

honesty and loyalty owed to Defendant. *See Carpenter ·v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (stating that "even in the absence of a written contract, an employee has a fiduciary obligation to protect confidential information obtained during the course of his employment") (internal quotation omitted).

Defendant clearly has a legitimate and substantial interest in keeping sensitive personnel matters confidential. Plaintiff breached his duty of honesty and loyalty by surreptitiously tape recording conversations with his supervisors and by giving a copy of the recording to Stout. Plaintiff has offered no reasonable justification for disclosing such confidential information to Stout. On balance, Defendant's interest in maintaining the confidentiality of its personnel information and employment practices outweighs Plaintiff's interest in opposing Defendant's allegedly unlawful employment practices by providing such information to Stout. Therefore, the court finds that Plaintiff's disclosure of confidential personnel information to Stout is not protected under the opposition clause of Title VII as a matter of law.

Plaintiff contends that even if his conduct does not fall within the protections of the opposition clause, the court should deny Defendant's motion for summary judgment because Plaintiff's conduct qualifies as protected activity under the participation clause of Title VII. The participation clause prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). "Activities [protected] under the participation clause are ·essential to 'the machinery set up by Title VII.'" *Laughlin*, 149 F.3d at 259 n. 4 (quoting *Hashimoto v. Dalton*, 118

F.3d 671, 680 (9th Cir.1997)) (internal quotation omitted). "As such, the scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause." *Id.* (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312 (6th Cir.1989)).

In *Glover v. South Carolina Law Enforcement Division,* 170 F.3d 411 (4th Cir. 1999), the Fourth Circuit held that the participation clause prohibits an employer from discharging an employee in retaliation for giving testimony in a Title VII proceeding because "the participation clause shields even allegedly unreasonable testimony from employer retaliation[.]" *Id.* at 412. The *Glover* court explained that a straightforward reading of the participation clause's unrestrictive language "leads inexorably to the conclusion that all testimony in a Title VII proceeding is protected against punitive employer action." *Id.* at 414.

■ Viewing the evidence in a light most favorable to Plaintiff, Plaintiff has established that he engaged in a protected activity under Title VII by testifying on behalf of Stout prior to Plaintiff's discharge from employment at the Lexington Mill. Therefore, the court finds that Plaintiff has produced sufficient evidence to satisfy the first element of his *prima facie* case of retaliatory discharge.

Plaintiff has also produced sufficient evidence to show a causal connection between his testimony in the *Stout* case and Defendant's decision to terminate his employment. "Normally, very little evidence of a causal connection is required to establish a *prima facie* case." *Tinsley v. First Union Nat. Bank,* 155 F.3d 435, 443 (4th Cir. 1998) (citing *Karpel,* 134 F.3d at 1229). In fact, the Fourth Circuit has held that "merely the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient

to make a *prima facie* case of causality." *Tinsley,* 155 F.3d at 443 (citing *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) (internal quotation omitted)).

■ On October 16, 2001, Plaintiff gave his deposition testimony in the *Stout* case. During his testimony, Plaintiff admitted that he had secretly recorded his conversations with Heaton and Kline and later provided Stout with an audiotape recording of those conversations. On the evening of October 18, 2001, Defendant terminated Plaintiff's employment at the Lexington Mill. The period of two days separating Plaintiff's deposition testimony and Defendant's decision to discharge Plaintiff is enough evidence to raise an inference of retaliation and create a *prima facie* case of causality. Therefore, the court finds that Plaintiff has produced sufficient evidence to establish a *prima facie* case of retaliatory discharge.

■ Once the plaintiff has established a *prima facie* case of retaliation, "the burden is on the employer to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Beall,* 130 F.3d at 619 (citing *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir.1994)). In the instant case, Defendant maintains that it discharged Plaintiff because Plaintiff knowingly and intentionally shared confidential personnel information with a third party in violation of his contractual duties of loyalty and confidentiality owed to Defendant. Defendant cites the Confidentiality Agreement, the Code of Conduct, and the Mill Guidelines as bases for its decision to discharge Plaintiff.

■ Plaintiff's activities in the tape recording of conversations with his supervisors at the Lexington Mill and disclosing the substance of those conversations with Stout are distinct and separable from the protected activity of providing deposition

testimony in Stout's lawsuit against Defendant. *See Glover,* 170 F.3d at 415 (distinguishing unprotected conduct from protected conduct under the participation clause because "the employee's conduct, although related to protected activity, was distinct and separable from that activity"). Plaintiff cannot claim protection under the participation clause for such activity simply because he admitted to disclosing the confidential personnel information to Stout during his deposition testimony.

Stout testified in his deposition that he never asked Plaintiff for assistance in his lawsuit against Defendant and that he never requested Plaintiff to provide him with any confidential information relevant to his lawsuit against Defendant. *See Laughlin,* 149 F.3d at 259 (declining to characterize employee's disclosure of confidential information to former employee as participatory activity partially because former employee had not requested employee's assistance in former employee's lawsuit against employer). Therefore, the court finds that Plaintiff is not entitled to protection under the participation clause for his disclosure of confidential personnel information to Stout.[4]

Defendant has met its burden of production and produced a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment at the Lexington Mill. *See N.L.R.B. v. Local Union No. 1229, Int'l Bhd. of Elec. Workers,* 346 U.S. 464, 472, 74 S.Ct. 172, 98 L.Ed. 195 (1953) (stating that "[t]here is no more elemental cause for discharge of an em-ployee than disloyalty to his employer"); *Banks v. Jefferson–Smurfit,* 176 F.Supp.2d 499, 509 (M.D.N.C.2001) (finding that employee's violation of employment policy was a legitimate, non-retaliatory reason for discharge); *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990) (finding that lawsuit filed by employer against employee to enforce contractual agreement to protect confidential information from improper and unauthorized disclosure was a legitimate, non-retaliatory reason for such adverse employment action against employee); *see also Peterson v. West,* 122 F.Supp.2d 649 (W.D.N.C.2000) (finding a legitimate and non-discriminatory reason for employee's discharge after employee attempted to surreptitiously tape record a meeting with his direct supervisor); *Ingram v. Pre–Paid Legal Servs., Inc.,* 4 F.Supp.2d 1303 (E.D.Okla.1998) (acknowledging a legitimate and non-discriminatory reason for employee's discharge after employee surreptitiously tape recorded conversations with his superiors in violation of employment policy prohibiting such conduct).

Defendant has rebutted Plaintiff's *prima facie* case of retaliation by producing a legitimate, non-discriminatory reason for discharging Plaintiff from his employment at the Lexington Mill. Plaintiff now bears the burden of proving that Defendant's proffered reason was mere pretext for retaliation by showing " 'both that the reason was false and that discrimination was the real reason' for the challenged conduct."

---

4. As stated above, Plaintiff has not offered any justifiable reason for his disclosure of Defendant's confidential personnel information other than his belief that "it might be information that Stout could use." This case does not present the issue of whether an employee's disclosure of an employer's confidential business information during discovery or pursuant to a subpoena from the court falls within the scope of the participation clause as a protected activity. Disclosure of confidential information in response to a formal request for production would arguably receive extensive protection under Title VII because the court could take steps to protect the business interests of the employer by sealing documents, issuing protective orders, restricting the admissibility of evidence at trial, and conducting in camera proceedings where appropriate.

*Jiminez v. Mary Washington College,* 57 F.3d 369, 378 (4th Cir.1995) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis omitted)).

In the instant case, Plaintiff contends that the close temporal proximity between the date of his deposition testimony and the date of his termination shows that Defendant's proffered reason for terminating Plaintiff's employment at the Lexington Mill was a pretext for retaliation. However, Plaintiff cannot rely on temporal proximity alone to establish pretext. *See Banks,* 176 F.Supp.2d at 509 (concluding that proof of a temporal proximity between the date an employee engaged in a protected activity and the date of his discharge is insufficient evidence to rebut an employer's legitimate reason for discharging the employee).

█ In his deposition, Plaintiff specifically stated that he felt Defendant terminated his employment because of his adverse deposition testimony in Stout's lawsuit against Defendant:

Q: Did it, at any point in time, run through your mind that perhaps you were being terminated because of the secret tape recordings?

A: Well, you had told me on the 16th that—something to the effect of—that that would fall under that category, but I didn't feel so. I didn't feel so. I didn't feel that it did.

Q: What do you think the reason is, then, if it is not the tape-recordings that you made of Mr. Heaton and Mr. Kline's conversations; what do you think the reason is for your termination?

A: I think I was terminated—I think my civil rights were broken in the effect that—in the effect that I was fired the—right after I testified with information that was negative towards Kimberly–Clark. I think it was retribution.

Q: It was retribution for the testimony you gave in your deposition?

A: Yes, sir, and I guess subsequently helping Mr. Stout.

(Mem. Supp. Def.'s Mot. for Summ. J., Ex. A (Pl.'s May 2, 2003, Dep. at 116–17).) However, "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams,* 871 F.2d at 456 (citing *Gairola v. Commonwealth of Virginia Dept. of Gen. Servs.,* 753 F.2d 1281, 1288 (4th Cir. 1985)). " 'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 960–61 (4th Cir.1996) (quoting *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980)).

█ The evidence presented shows that on October 18, 2001, the Lexington Mill managers focused only upon Plaintiff's breach of his duties of confidentiality and loyalty owed to Defendant as a basis for their decision to discharge Plaintiff.[5] Moreover, Kline never cited Plaintiff's adverse deposition testimony when he explained to Plaintiff the basis for Defendant's decision to discharge Plaintiff. Furthermore, the evidence presented shows that Defendant did not take any adverse employment action against four other employees who were deposed along

---

5. The Lexington Mill managers' meeting notes show that none of the managers present discussed Plaintiff's deposition testimony except to the extent necessary to establish that Plaintiff admitted to providing confidential business information to Stout. *See* Mem. Supp. Def.'s Mot. for Summ. J., Ex. C (Kline Aff., Ex. 2); *see also id.* (Kline Aff. at ¶ 11).

with Plaintiff although they also testified in a manner adverse to Defendant's interests in the Stout litigation.

"Even in discrimination cases where motive and intent are critical to the analysis, 'summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation.'" *Bodoy v. North Arundel Hosp.*, 945 F.Supp. 890, 894 (D.Md.1996) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). In the instant case, Plaintiff has simply provided no evidence that Defendant discharged him for any reason other than Plaintiff's disclosure of confidential personnel information to Stout. Viewing the evidence in a light most favorable to Plaintiff, the court finds that Plaintiff has failed to produce sufficient evidence that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff was a mere pretext for retaliation. Therefore, the court will grant Defendant's motion for summary judgment as to Plaintiff's retaliatory discharge claim.

## B. Plaintiff's State Law Claims

■■■ Plaintiff's complaint alleges both federal and state law claims for relief against Defendant. Plaintiff's claim of retaliatory discharge in violation of Title VII raises a federal question over which the court has original jurisdiction. *See* 28 U.S.C. §§ 1331 and 1441(a). The court also has supplemental jurisdiction over Plaintiff's remaining claim of wrongful termination in violation of the common law of the State of North Carolina because it is so related to Plaintiff's Title VII claim that it forms part of the same case or contro-versy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367(a).[6]

■■■ In his "First Cause of Action," Plaintiff alleges wrongful termination in violation of North Carolina common law. As a general rule in North Carolina, an employee at will has no claim for wrongful discharge. *Walker v. Westinghouse Elec. Corp.*, 77 N.C.App. 253, 260, 335 S.E.2d 79, 84 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986). "However, [the employment-at-will] doctrine is not without limits and a valid claim for relief exists for wrongful discharge of an employee at will if [his employment] is terminated for an unlawful reason or a purpose that contravenes public policy." *Tompkins v. Allen*, 107 N.C.App. 620, 622, 421 S.E.2d 176, 178 (1992), *disc. review denied*, 333 N.C. 348, 426 S.E.2d 713 (1993) (citation omitted). Under these narrow exceptions, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy. *Considine v. Compass Group U.S.A., Inc.*, 145 N.C.App. 314, 317, 551 S.E.2d 179, 181 (2001); *see also Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). In the instant case, Plaintiff alleges in his complaint that Defendant terminated him because "he truthfully testified against the interests of Defendant ... during the course of his October 16, 2001, deposition in the Stout matter." (Pl.'s Compl. ¶ 15.) Plaintiff describes his termination as "tantamount to suborning perjury" (Pl.'s Compl. ¶ 16) which is against North Carolina public policy. *See Sides v. Duke University*, 74 N.C.App. 331, 343, 328

---

**6.** Whether federal law claims and state law claims form part of the same case or controversy is determined by whether they "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial pro-ceeding.'" *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir.2001) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (alteration in original)).

S.E.2d 818, 826–27, *disc. review denied,* 314 N.C. 331, 333 S.E.2d 490 (1985) (holding that plaintiff's complaint stated a valid claim against defendant for "wrongfully discharging her from her employment in retaliation for her refusal to testify falsely or incompletely"), *overruled on other grounds by Kurtzman v. Applied Analytical Indus., Inc.,* 347 N.C. 329, 493 S.E.2d 420 (1997). However, as noted above, Plaintiff has failed to produce sufficient evidence to support his allegation that Defendant wrongfully discharged him in retaliation for his deposition testimony adverse to Defendant's interests in the Stout matter.

■ Viewing the evidence presented in a light most favorable to Plaintiff, no evidentiary basis exists for a rational jury to find that Defendant wrongfully terminated Plaintiff's employment based on reasons contrary to public policy. The evidence presented shows that Defendant discharged Plaintiff because Plaintiff violated his confidentiality obligations to Defendant. Therefore, the court will grant Defendant's motion for summary judgment as to Plaintiff's wrongful termination claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted on all of Plaintiff's claims, and this action will be dismissed.

An order and judgment in accordance with this memorandum shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant's motion for summary judgment [Doc. # 15] is GRANTED on all

of Plaintiff's claims, and this action is hereby DISMISSED with prejudice.