**William S. LILLY, Plaintiff,**

v.

**MASTEC NORTH AMERICA, INC., Defendant.**

No. 1:02 CV 00339.

United States District Court, M.D. North Carolina.

Jan. 12, 2004.

James R. Cummings, William Joseph Austin, Jr., Ward and Smith, P.A., New Bern, NC, for plaintiff.

Rodolfo Ruben Agraz, Bernhard Mueller, Haynsworth, Baldwin, Johnson & Greaves, LLC, Raleigh, NC, Eric Michael David Zion, Fisher & Phillips, Atlanta, GA, for defendant.

## MEMORANDUM OPINION AND ORDER

ELIASON, United States Magistrate Judge.

Plaintiff has made claims against his employer alleging disability discrimination and retaliation for seeking workers' compensation. This case comes before the Court on defendant's motion for summary judgment. That motion has been fully briefed and is ready for decision.

### Facts

The basic facts, as shown by the record and taken in the light most favorable to plaintiff, are as follows. Plaintiff began his employment with defendant's predecessor, Weeks Construction Company, in 1983. He started work as a "Groundman" on a crew installing overhead power poles and was eventually promoted to Lineman and then, in 1992, to Overhead Foreman. As Foreman, he was in charge of a crew of four to five men.

So far as the record indicates, all went well until September of 1997 when plaintiff was injured in a motor vehicle accident while on the job. This resulted in damage to his right knee and a ruptured disc in his back, with the latter condition eventually requiring a partial laminectomy. After the completion of medical treatment, plaintiff was left with fifteen percent permanent disability ratings for both his back and right knee and a twenty-five pound permanent lifting restriction. Plaintiff also filed for workers' compensation as a result of his injuries in the accident.

Following his accident, plaintiff was out of work on leave, but remained employed by defendant. In October of 1998, he was cleared to return to work on a progressive schedule and was put to work in a warehouse cleaning, stocking inventory, and running errands. According to plaintiff, when he completed the progressive schedule, he asked to return to his position as Foreman, but was told that there was no crew for him to manage. Therefore, he was assigned to work as a Groundman.

There is a dispute as to the nature of plaintiff's assignment as Groundman. Don Lilly,[1] the supervisor making the assignment, contends it was a light duty assignment. He claims that plaintiff was basically sent to work for his father, who was Foreman of the crew to which plaintiff was assigned, with the idea that he would do whatever work he was able to do and that his father would look out for him. Plaintiff asserts that the job of Groundman, by its very nature, is not a light duty job and exceeds his physical limitations. In any event, upon learning of the work plaintiff was performing, plaintiff's doctor wrote a letter requesting that he be allowed to return to his job as Foreman or another light or medium duty position with some restrictions. According to plaintiff, he was told no Foreman's position was open and that there was no light duty work available. Defendant maintains that it did not return plaintiff to a Foreman's position because his restrictions and impairments rendered him unable to perform essential parts of the job. Therefore, plaintiff returned home on leave in early December of 1998.

Although others were promoted to Foreman positions during the time that plaintiff remained out on leave, he was not returned to work. Eventually, Weeks Construction was purchased by defendant. However, plaintiff continued to be out on leave. Finally, in December of 2000, Cheryl Doan, an adjuster with defendant's workers' compensation insurance carrier, Liberty Mutual, agreed to a settlement of plaintiff's workers' compensation case. The agreement was that plaintiff would be paid $25,000 in advance with weekly disability checks continuing to be sent until the agreement was approved by the North Carolina Industrial Commission (NCIC), at which time plaintiff would receive an additional $125,000.

Plaintiff was paid the $25,000, and Liberty Mutual began drafting the settlement documents. However, when Liberty Mutual delivered the settlement documents to plaintiff's attorney for signature, it submitted a resignation and release form that had not been part of the negotiations. Plaintiff refused to sign the resignation because he still hoped to return to his job as Foreman with defendant. Defendant ordered Liberty Mutual not to end the case without the resignation and release. The reasons for this direction are in dispute and will be discussed later in further detail. In any event, Liberty Mutual suspended plaintiff's weekly disability payments and plaintiff claims that he was told that if he signed the resignation, he would get the rest of his money. Instead, plaintiff's attorney initiated proceedings before the NCIC to enforce the settlement as agreed upon, i.e., a $150,000 payment without the resignation. Shortly before the hearing, defendant and Liberty Mutual did agree to close the case under the original settlement terms. A few days later the final agreement, without a resignation clause, was filed with the NCIC.

On the day following the filing of the final agreement with the NCIC, defendant issued a letter terminating plaintiff's employment "[d]ue to [his] inability to return to work." (Pl.Dep, Ex. 12) This letter was signed by Cindy Robinson, an employee of defendant. According to plaintiff, he called to see why he had been terminated and was told by Robinson that he had been terminated because his doctors had not released him to return to work. Plaintiff informed her that his doctor had stated that he could come back to work as a Foreman with limitations which would not prevent him from doing the job. Robinson

allegedly became belligerent and told him to look elsewhere for work. Plaintiff claims that when he told her that he did not want to go elsewhere because he enjoyed his job with defendant, Robinson responded by telling him that he had already gotten his $150,000 out of the company and that he should move on.

Plaintiff did move on to a great extent. He used his settlement money to buy some of the equipment necessary to start his own excavating and tree removal business. He still operates that business using his father's bucket truck and now owns a boom truck, chipper, dump truck, excavator and tractor trailer. He uses this equipment to remove trees from yards, excavate ponds, and clean out ditches. However, upset by defendant's actions and what he considers his wrongful termination from a job he was willing and able to perform, plaintiff also filed this lawsuit alleging that his termination violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and North Carolina's Retaliatory Employment Discrimination Act (REDA), N.C. Gen.Stat. § 95–240, *et seq.* Defendant now moves for summary judgment as to both of plaintiff's claims.

### Summary Judgment Standards

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory state-

ments, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence,* that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. *Sibley v. Lutheran Hosp. of Maryland, Inc.,* 871 F.2d 479 (4th Cir.1989).

### Discussion

### ADA Claim

■ To establish that he was terminated in violation of the ADA, plaintiff must show (1) that he is an individual with a disability as defined in the ADA, (2) that defendant knew this, (3) that he could have performed the essential functions of his job with reasonable accommodations, and (4) that defendant terminated him rather than make such accommodations. *Rhoads v. Federal Deposit Ins. Corp.,* 257 F.3d 373, 387 (4th Cir.2001), *cert. denied,* 535 U.S. 933, 122 S.Ct. 1309, 152 L.Ed.2d 219 (2002). In the present case, defendant does not deny that it knew that plaintiff had a twenty-five pound lifting restriction and fifteen percent permanent disabilities in his back and knee. Nor does it deny that it terminated plaintiff without making any accommodations for him. Instead, it argues that he is not impaired to the point that he is "an individual with a disability" as defined by the ADA and that, even if he is, he could not have performed the essential functions of his job as Foreman, with or without accommodations.

A person is disabled under the ADA if he has a physical or mental impairment that substantially limits at least one major life activity, a record of such an impairment, or is regarded as having that type of impairment. 42 U.S.C. § 12102(2). "In order to demonstrate that an impairment is substantially limiting, an individual must show that [he] is significantly restricted in a major life activity." *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 467 (4th Cir.), *cert. denied*, 537 U.S. 827, 123 S.Ct. 122, 154 L.Ed.2d 39 (2002), *citing Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir.1997). Plaintiff alleged in his complaint that he was substantially limited in the major life activities of manual tasks, lifting, walking, and working. However, at summary judgment, plaintiff has pursued only the argument that he is substantially limited in his ability to work.[2]

The United States Supreme Court has discussed the conceptual difficulties with counting work as a major life activity when applying the ADA. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200, 122 S.Ct. 681, 692, 151 L.Ed.2d 615 (2002). While both the Supreme Court and the Fourth Circuit Court of Appeals have decided cases based on the assumption that working may be a major life activity, neither has yet settled the question once and for all. *Id.* at 200, 122 S.Ct. at 693; *Pollard*, 281 F.3d at 467 n. 1.

Regulations of the Equal Employment Opportunity Commission (EEOC) establish criteria for use in determining whether the major life activity of working is substantially limited by an impairment. Substantially limited means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having *comparable training, skills and abilities.*" 29 C.F.R. § 1630.2(j)(3) (emphasis added). A restriction in ability must arise from the physical or mental impairments shown in each case. *Halperin*, 128 F.3d at 198. Also, a person is not disabled because he is unable to perform a particular job or a narrow range of jobs. *Id.* at 199, *citing, Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). Nor is it significant that plaintiff cannot perform his prior job. *Carroll v. Xerox Corp.*, 294 F.3d 231, 240 (1st Cir.2002).

The EEOC regulations further set out factors for deciding whether an individual is precluded from a class or broad range of jobs. These are: (1) the nature of the impairment, (2) the expected duration of the impairment, (3) the permanent or long term impact of the impairment, (4) the geographical area to which the person has reasonable access, and (5) the number and types of both similar and dissimilar jobs[3] in the same area from which the person would be excluded by his impairment. 29 C.F.R. § 1630.2(j)(2) & (3). The Court may also consider whether plaintiff was immediately employed in another job following termination from his original job. *Pollard*, 281 F.3d at 471; *Gelabert–Ladenheim v. American Airlines, Inc.*, 252 F.3d 54, 62 (1st Cir.2001) (collecting cases). The final determination of whether a person is substantially limited in a major life activity, and therefore disabled, is to be made on a case-by-case basis. *Toyota Motor*, 534 U.S. at 198, 122

---

**2.** Given the overall evidence in the record as cited above, the Court finds this narrowing of plaintiff's claims to be a reasonable one.

**3.** The terms "similar" and "dissimilar" refer to training, knowledge, skills or abilities required to perform the job from which plaintiff is disqualified because of his impairment.

S.Ct. at 692; *Halperin*, 128 F.3d at 198 n. 10.

The Court will now apply these rules and guidelines to the present case. Plaintiff has fifteen percent impairments in his knee and back and a twenty-five pound lifting restriction and they appear to be permanent. However, plaintiff does not have any impairment that is nearly a total impairment in any joint or area of his body. This has left plaintiff able to perform all major life activities except, he contends, working. Circuit courts generally, and the Fourth Circuit in particular, have not historically treated these types of impairments as disabling. *Thompson v. Holy Family Hospital*, 121 F.3d 537 (9th Cir.1997) (back injury with twenty-five pound lifting restricting not disabling); *Halperin, supra* (twenty pound lifting restriction not disabling); *Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346 (4th Cir.1996), *cert. denied*, 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997) (twenty-five pound restriction not disabling as a matter of law) [4]; *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311 (8th Cir.1996); and *see Duncan v. Washington Metropolitan Area Transit Authority*, 240 F.3d 1110, 1116 (D.C.Cir.), *cert. denied*, 534 U.S. 818, 122 S.Ct. 49, 151 L.Ed.2d 20 (2001) (collecting cases). While the case-by-case nature of ADA disability determinations may prevent these cases from conclusively ending plaintiff's claim, they weigh very heavily against finding him disabled.

■ The remaining factors look to the types and number of jobs from which plaintiff is excluded in his geographical area due to his impairments. To support his case on this issue, plaintiff has submitted an affidavit from an expert witness, Robert Manning, Jr., who works as a Masters Level Certified Rehabilitation Counselor. Manning states that he reviewed plaintiff's medical files and became knowledgeable as to plaintiff's injuries, treatment, surgery, recovery, and current physical impairments. He concludes that plaintiff is disabled under the ADA by finding plaintiff to be precluded from performing a broad range of assembly and manufacturing jobs because of his lifting restrictions and knee impairment. He continues that plaintiff's "physical limitations, education level, lack of experience in dealing with customers, lack of computer skills and experience operating cash registers or handling money would prevent him from obtaining employment in a broad range of jobs available in the retail class of jobs . . . compared to the average person." (Manning Aff. at 2–3) Last, he opines that employers will question his dependability due to concerns of his need for further medical treatment.

■ Defendant objects to the vocational expert's opinion for its being conclusory, and further for ignoring plaintiff's actual self-employment work experience after he was terminated. This objection has merit. The role of expert witnesses in ADA cases is still in a state of flux. It appears that a vocational expert can be used to establish

---

4. The Fourth Circuit has actually stated that a twenty-five pound lifting restriction is, as a matter of law, not a disability. *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 349 (4th Cir.1996), *cert. denied*, 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997). However, in light of the Supreme Court's admonition in *Toyota Manufacturing* that disabilities are to be determined on a case-by-case basis and the Fourth Circuit's similar statement in *Halperin*, this proposition is in doubt. Further, the Fourth Circuit did not appear to find in *Halperin* that the plaintiff was not disabled solely because a twenty-five pound lifting restriction was not enough to find a person to be disabled. Instead, it did consider other factors. This Court will do the same.

the range or number of jobs available to individuals who have limitations like plaintiff's. *Carroll,* 294 F.3d at 240 (collecting cases), but such testimony is not a necessity. *Duncan,* 240 F.3d at 1117 n. 5. In all events, an expert may not subsume the factfinder's role by presenting his or her legal conclusions. *Gelabert–Ladenheim,* 252 F.3d at 62; *Black v. Roadway Express, Inc.,* 297 F.3d 445 (6th Cir.2002). For his opinion to be useful, Manning would have had to define the geographic area he considered, set out the number, types, and classes of jobs available in that area, testify as to which of those jobs plaintiff was excluded from based on his limitations, and explain the basis for his testimony in that regard. Thus, the nature of the testimony ought to be to inform the Court about the extent to which plaintiff is excluded from the labor market based solely on his limitations. *E.E.O.C. v. Rockwell Intern. Corp.,* 243 F.3d 1012, 1018 (7th Cir.2001). Instead, Manning makes conclusory assertions as to two areas of the labor market without providing any details as to the jobs, their numbers, etc. *See Broussard v. University of California, at Berkeley,* 192 F.3d 1252, 1258 (9th Cir.1999).

Moreover, Manning lumps plaintiff's injuries in with lack of skills, training, etc., as disqualifying factors. For example, Manning states that plaintiff's lack of education and experience with customers, computer skills, or cash register or money handling, excludes him from a broad range of retail jobs. However, the key question to be answered is not whether plaintiff is excluded from a class or broad range of jobs due to his lack of education, training, experience, etc., but whether he is excluded from such jobs at a substantially greater rate because of his impairment given his education, training, etc. *Halperin,* 128 F.3d at 198. If plaintiff were disqualified from large numbers of jobs based mostly on lack of skills, etc., this would tend to show that his injuries were not a factor in his "inability" to work and would tend to show plaintiff was not disabled under the ADA.

Manning also relies on an irrelevant factor in reaching his conclusion that plaintiff is disabled. He notes that, in his experience, potential employers will question plaintiff's ability to be dependable because he may need time off for further medical treatment and because he has an extended period of non-work on his record. He also states that potential employers might hesitate to enroll plaintiff in certain benefit packages. (Manning Aff. ¶ 6) However, these factors are not reflected in the EEOC regulations. Nor does plaintiff point to any regulatory or case law suggesting that such factors are appropriate to consider. Moreover, an inherent problem would arise from using such factors in that they rely on speculation of possible illegal conduct by potential employers. To allow such speculation could sweep large numbers of able, recovered, and capable persons within the purview of the ADA. The United States Supreme Court has warned against needlessly expanding the reach of the ADA. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

In addition to failing to cite to relevant information and relying on irrelevant considerations, the Manning affidavit is defective for failing to consider one very important fact. Nowhere in his affidavit does Manning state that he considered that soon after plaintiff's termination from his employment with defendant, plaintiff began to work trimming trees and excavating. Nor does he appear to have considered that plaintiff is still able to perform that work and that plaintiff does so using much of the same equipment that he used in performing his job with defendant. The

Fourth Circuit has specifically found that the fact that a plaintiff is immediately employable in a similar job weighs against the person being found disabled under the ADA. *Pollard, supra,* at 471; *see also Gelabert–Ladenheim,* 252 F.3d at 62. This is the third and final strike against the affidavit. It is not admissible for the above discussed reasons and deficiencies and fails to support a showing that plaintiff is disabled.

Overall, the only factor weighing in plaintiff's favor is that his impairments are permanent. On the other hand, the nature and severity of his impairments and the fact that he is and has been performing physical labor employment using equipment similar to that used in his prior job, weigh heavily against him under *Halperin, Williams,* and *Pollard.* With the exclusion of Manning's testimony, plaintiff has not offered sufficient probative evidence of the number and types of jobs in any specific geographical area from which he would be excluded due solely to his impairment. He simply has not produced evidence from which a trier of fact could find that he is excluded from a broad range of jobs or a class of jobs due to his impairment.

■ As a combined result of his limitations not being of a nature so as to normally disable him from the major life activity of work, and his failure of proof in that regard, plaintiff cannot show that he is substantially impaired in the major life activity of working. His claim that he is disabled under the ADA. fails, and defendant's motion for summary judgment will be granted as to this claim.[5]

### REDA Claim

■ In addition to the ADA, plaintiff also raises a claim under North Carolina's Retaliatory Employment Discrimination Act (REDA). In North Carolina, an employer is prohibited from discriminating or retaliating against an employee because the employee made a good faith claim for workers' compensation. N.C. Gen.Stat. § 95–24(a). *Wiley v. United Parcel Service,* 102 F.Supp.2d 643, 650 (M.D.N.C. 1999), *aff'd,* 11 Fed.Appx. 176, 2001 WL 431478 (4th Cir.2001). To prove his REDA case, plaintiff must show that (1) he had a workers' compensation claim, (2) defendant took an adverse employment action against him, (3) the workers' compensation claim was a substantial factor in whatever adverse employment action was taken against him, and (4) the adverse action would not have occurred in the absence of the employer's knowledge of the claim. *See Johnson v. Friends of Weymouth, Inc.,* 120 N.C.App. 255, 461 S.E.2d 801 (1995), *rev. denied,* 342 N.C. 895, 467 S.E.2d 903 (1996).

■ The North Carolina courts have held that plaintiffs may generally rely on the evidentiary standards employed in federal discrimination cases to establish REDA claims. *Wiley,* 102 F.Supp.2d at

5. Plaintiff does not argue that he qualifies for coverage under 42 U.S.C. § 12102(2)(C) of the ADA because his employer regarded him to be disabled. To qualify, a plaintiff must show that the employer regarded him as having a disability which substantially limited a major life activity. *Nielsen v. Moroni Feed Co.,* 162 F.3d 604, 610 (10th Cir.1998). It is not enough that the employer perceives a person to be unable to perform a previous position. Rather, the employer must perceive the individual to be unable to perform a major life activity or a wide range of jobs as previously discussed. *Buskirk v. Apollo Metals,* 307 F.3d 160, 167 (3d Cir.2002). In the instant case, the evidence shows that defendant only regarded plaintiff as having the lifting and other limitations established by the workers' compensation award and, therefore, unable to perform the duties of his job. Such a limited perception does not satisfy the ADA. *Nielsen,* 162 F.3d at 611.

650. This means that plaintiff may either proceed using direct evidence or may rely on inferential proof under the now familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.* Under the burden-shifting model, plaintiff must first establish a prima facie case. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–511, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993) (citing *McDonnell Douglas*, at 802, 93 S.Ct. at 1824.) To do this in the present case, plaintiff must show that (1) defendant was aware that he filed a workers' compensation claim, (2) an adverse employment action was taken against him, and (3) that the adverse action and protected activity are causally related. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). If plaintiff is able to do this, defendant must show that there was a valid reason for any actions it took regarding him. *Hicks*, 509 U.S. at 510, 113 S.Ct at 2742. Once such a reason is proffered, plaintiff then has to demonstrate that the apparently valid reason was actually a pretext for discrimination. *Id.*

Although defendant focuses on plaintiff's ability to satisfy the *McDonnell Douglas* burden-shifting scheme, plaintiff asserts that he can establish his case through both direct evidence and the *McDonnell Douglas* burden-shifting method. Because the burden-shifting method is considered to be the easier method for a plaintiff to use to establish a case, the Court will consider that issue first.

There is no question that plaintiff filed and pursued a good faith workers' compensation claim, that defendant knew about this, and that defendant took adverse action against him in the form of termination. Therefore, the first two elements of his prima facie case can easily be established. The remaining question then is whether plaintiff has presented sufficient evidence to show that his pursuit of his workers' compensation claim was causally related to his termination.

It is essentially undisputed that defendant attempted to insert an unnegotiated resignation into the settlement reached between plaintiff and defendant's insurance company. Although defendant's insurance company was the party who initially included the resignation in the settlement papers it sent to plaintiff, it was defendant that then refused to allow the settlement to be completed as negotiated and insisted that the resignation be signed. At some point, the insurance company became uncomfortable with this approach to the point that it actually decided that it must move forward with the settlement even without agreement from defendant and leave any employment issues to defendant and its attorneys. (Johnston Aff. Ex., p. WL00079) Soon after, defendant did agree to go forward without the resignation and the settlement was completed. (*Id.* at WL00080)

Defendant first argues that the claim must be dismissed because there is no "close temporal connection" between the *filing of the charge* and plaintiff's termination. That is true and such a factor may have been important under an earlier version of the pertinent statute, *i.e.* N.C. Gen. Stat. § 97–6.1 (repealed 1991). *See Shaffner v. Westinghouse Elec. Corp.*, 101 N.C.App. 213, 398 S.E.2d 657 (1990), *rev. denied*, 328 N.C. 333, 402 S.E.2d 839 (1991). However, the current version, now contained in N.C. Gen.Stat. § 95–241, covers all aspects of a workers' compensation proceeding, including claims, complaints, inquiries, investigations, inspections, proceedings, other actions, and testifying. N.C. Gen.Stat. § 95–241(a)(1); *Wiley v. United Parcel Service, Inc.*, 227 F.Supp.2d 480, 486 (M.D.N.C.2002). Thus, negotiat-

ing a settlement falls within the protection of the REDA. In the instant case, there is a close temporal proximity between the dispute involving the negotiation of the settlement and the termination. Plaintiff was dismissed one day after the settlement. This is sufficient to establish a prima facie case. Defendant, therefore, has the burden of coming forward with a legitimate, non-discriminatory reason for the termination.

▉ Defendant does not directly discuss whether it has rebutted the prima facie case, except by the offhand remark that it would have terminated plaintiff even in the absence of plaintiff's protected activity. (Def. Br. at 17) Instead, it recognizes that plaintiff has introduced direct evidence of discrimination which may supersede and, thus, obviate the prima facie showing. Consequently, it spends its effort attempting to defeat that proof. On either front, however, defendant's. arguments fail to carry the day.

The Court will first return to plaintiff's prima facie case. The question is whether defendant has proffered a legitimate reason for plaintiff's termination. Defendant steadfastly maintains that it terminated plaintiff because he was physically unable to perform the essential functions of Foreman and it had no other jobs which he was able to perform. Plaintiff does not deny that the lack of any job for him to return to would be a legitimate reason for defendant to terminate him from its employ.

This moves the matter to the final stage of the *McDonnell Douglas* analysis for a determination of whether plaintiff has provided evidence from which a jury could find that defendant's proposed legitimate reason is actually a pretext for a retaliatory firing. As will be seen, plaintiff has produced such evidence and is entitled to proceed beyond summary judgment on his REDA claim.

Plaintiff has submitted evidence which, if accepted, would prove that he was able to return to his job as Foreman. First, plaintiff, who has served as a Foreman, has testified in an affidavit that the job duties of a Foreman varied greatly depending on who was performing the job and that person's preferences. (Pl.Aff.¶ 5) He admitted that in the past, while working as a Foreman, he had worked in a bucket on a bucket truck, climbed poles, and lifted objects weighing more than twenty-five pounds. All of these duties would now be difficult or impossible due to his impairments. However, he argues that all of these duties are also optional and that they can either be assigned to other men on the work crew being supervised by the Foreman or that the Foreman can receive help from the other men or equipment. (*Id.* ¶¶ 6, 7) According to plaintiff, while some Foremen performed these tasks themselves, others did not. Don Lilly admitted that there were persons working in the Foreman position who had not climbed a pole in three years and had not worked in a bucket for six months. (Don Lilly Dep. at 154) He was unable to say whether or not there was any Foreman who had not done bucket work in three years. (*Id.*)

Defendant contends that working in buckets, climbing poles, and lifting objects greater than twenty-five pounds were essential functions of the Foreman position and that no accommodations could be made to allow the job to be performed without engaging in these activities. This comes from plaintiff's Exhibit 1 to plaintiff's deposition which merely lists the Foreman job description. However, plaintiff said that not all Foremen actually performed all duties, but could have another crew member do them. The Court may not resolve this dispute. In the end, defendant's arguments only highlight an is-

sue for the jury to decide concerning the requirements of the Foreman's position. *Anderson v. G.D.C. Inc.*, 281 F.3d 452, 458 (4th Cir.2002). The affidavits of plaintiff and Manning, and even some of Don Lilly's testimony, viewed in a light most favorable to plaintiff, are sufficient to allow the matter to proceed beyond summary judgment.

Plaintiff also presents direct evidence of retaliation through the testimony of Cheryl Doan, an employee of Liberty Mutual who worked with defendant in settling plaintiff's workers' compensation claim. According to Doan's contemporaneous notes, a discussion with defendant's representative occurred concerning the importance of making sure the settlement included plaintiff's resignation. She was told by Cindy Robinson that one of the reasons that defendant did not want plaintiff to return to work was because he had "relatives that work at [for defendant] and there are other issues." (Pl.Dep.Ex. 12A, p. WL00073) At her deposition, Doan ex-

plained this somewhat cryptic notation by stating that she was told that plaintiff had other relatives working for defendant, that it was a small community, and that they feared that if relatives and co-workers learned of the settlement, they might start "seeing dollar signs" and file their own claims as a way to get "easy money." (Doan Dep. at 15, 41–43)[6] These statements, if attributed to defendant,[7] along with Robinson's alleged later comment to plaintiff that he should stop trying to get his job back because he had already gotten his $150,000 out of defendant, can constitute direct evidence of retaliation. Moreover, this view of the evidence is reinforced by testimony from Don Lilly, plaintiff's supervisor and one of the persons who made the decision to terminate plaintiff. He testified at his deposition that he felt plaintiff exaggerated his injuries and that it bothered him that plaintiff was receiving disability checks while staying home and not working. (Don Lilly Dep. at 105–106)[8] All of these statements

6. Doan also testified that it was plaintiff's not being able to work and defendant not having a job for him that were defendant's proffered reasons for seeking his resignation. (Doan Dep. at 41–43) However, this does nothing more than create a factual dispute. *See* n. 8, *infra.*

7. Defendant objects to certain evidence proffered by plaintiff, including Doan's testimony and notes which contain statements allegedly made by defendant's employees Zillian Bryant and Cindy Robinson during the pendency of plaintiff's workers' compensation claim. (The notes containing the statements all appear to be admissible as business records. Fed. R.Evid. 803(6).) These statements generally concern defendant's position regarding the resignation clause. Defendant contends that these statements are inadmissible hearsay. However, it would appear that the statements are admissible as admissions of a party opponent under Fed.R.Evid. 801(d)(2)(C) & (D). These subsections address (1) statements offered against a party which are made by a person authorized to make a statement on the

subject of the statement and (2) statements made by an agent or servant of a party that concern a matter within the scope of that person's agency or employment and which are made during the course of the agency or employment relationship. The Rule declares that such statements are not hearsay.

Defendant asserts that plaintiff has not shown that statements made by Bryant and Robinson fall into these categories. However, the record shows that Robinson and Bryant were the contact persons between defendant and its insurance company as far as the progression of plaintiff's case and the settlement negotiations were concerned. Certainly, setting the settlement terms and explaining the reasoning behind negotiating positions were within the scope of Bryant and Robinson's employment. The statements appear to be admissible as statements attributable to defendant.

8. As with Doan (*see* n. 6, *supra*), Don Lilly testified that the failure to return plaintiff to a Foreman's position had other motivations be-

together, along with defendant's firing of plaintiff one day after his workers' compensation case ended, constitute some direct evidence of discriminatory motive.[9]

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (docket no. 17) be, and the same hereby is, granted as to plaintiff's claim under the ADA and denied as to plaintiff's claim under REDA.

yond his problems with plaintiff's drawing a disability check for injuries that he felt were exaggerated. This, however, merely suggests that the case may be appropriate for a "mixed motive" jury instruction. *Kubicko v. Ogden Logistics Services*, 181 F.3d 544, 555 (4th Cir. 1999). It will be for a jury to decide what part this animosity played in plaintiff's discharge.

9. Plaintiff also produced a cryptic note from Zillian Bryant and a short affidavit from Danny Koonce which he says support his case. Bryant's note is far too cryptic to be understood without explanation. Koonce's affidavit that he was not allowed to return to work with defendant after he made a workers' compensation claim is, by itself, irrelevant to this case. Therefore, the Court did not consider them in deciding defendant's motion.