SHANNON FATTA, Plaintiff v. M & M PROPERTIES
MANAGEMENT, INC., Defendant

No. COA11-1397

(Filed 19 June 2012)

**Employer and Employee—Retaliatory Employment Discrimination
  Act—wrongful termination**

The trial court did not err in a Retaliatory Employment
Discrimination Act and wrongful termination case by granting
summary judgment in favor of defendant. Although plaintiff con-
tended that the paperwork related to plaintiff's poor performance
was generated subsequent to plaintiff's report of an injury and
threat to file a workers' compensation claim, plaintiff was unable
to overcome defendant's evidence that it was plaintiff's poor job
performance noted at the very beginning of his training and
throughout his employment that led to his termination.

Appeal by plaintiff from order entered 10 March 2011 by Judge
Christopher M. Collier in Iredell County Superior Court. Heard in the
Court of Appeals 21 March 2012.

*Shannon Fatta, pro se plaintiff-appellant.*

*Fisher & Phillips, LLP, by Margaret M. Kingston, for defendant-
appellee.*

BRYANT, Judge.

Where the trial court did not err in granting defendant's motion
for summary judgment as to plaintiff's Retaliatory Employment
Discrimination Act and wrongful discharge claims, we affirm the
order of the trial court.

*Facts and Procedural History*

Plaintiff Shannon Fatta was employed by defendant M & M
Properties Management, Inc., from 18 January 2010 through
7 February 2010 as a property manager of Value Place Hotel in Shelby,
North Carolina. Plaintiff alleged the following: on 21 January 2010, he
was injured while cleaning a room as a part of his training; on
2 February 2010, he notified defendant of his injury; on 3 February
2010, defendant issued plaintiff a first and final written disciplinary
documentation; on 7 February 2010, defendant terminated plaintiff's

employment; on 12 February 2010, plaintiff was diagnosed with having a hernia by a doctor in Statesville, North Carolina; and that same day—12 February 2010, five days after his termination, plaintiff filed a worker's compensation claim, Form 18, with the North Carolina Industrial Commission. Shortly thereafter, plaintiff filed a REDA complaint with the North Carolina Department of Labor ("NCDOL"). On 4 May 2010, plaintiff received a right-to-sue letter from the NCDOL.

On 6 July 2010, plaintiff filed a complaint against defendant alleging several causes of action relating to the Retaliatory Employment Discrimination Act ("REDA") and wrongful termination in violation of North Carolina public policy. On 18 February 2011, defendant filed a motion for summary judgment as to all claims. Following a hearing held on 28 February 2011, the trial court granted defendant's motion for summary judgment and dismissed plaintiff's claims with prejudice. From this order, plaintiff appeals.

---

Plaintiff presents the following issues on appeal: whether the trial court erred by granting defendant's motion for summary judgment where there were genuine issues of material fact regarding (I) plaintiff's REDA claim for his work injury; and (II) plaintiff's corresponding wrongful discharge claim. Because these arguments are closely related, we will address them together.

## Standard of Review

"Summary judgment when sought 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Majestic Cinema Holdings, LLC v. High Point Cinema, LLC*, 191 N.C. App. 163, 165, 662 S.E.2d 20, 22 (2008) (citation omitted).

"[T]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true. . . ." *Rose v. Guilford County*, 60 N.C. App. 170, 173, 298 S.E.2d 200, 202 (1982) (citation omitted). However,

the movant has the burden of establishing that there are no genuine issues of material fact. The movant can meet the burden by either: 1) Proving that an essential element of the opposing party's claim is nonexistent; or 2) Showing through discovery that

the opposing party cannot produce evidence sufficient to support an essential element of his claim nor [evidence] sufficient to surmount an affirmative defense to his claim.

*Noblot v. Timmons*, 177 N.C. App. 258, 261, 628 S.E.2d 413, 414 (2006) (citation omitted). "On appeal, an order allowing summary judgment is reviewed *de novo*." *Carson v. Grassmann*, 182 N.C. App. 521, 523, 642 S.E.2d 537, 539 (2007) (citation omitted).

### I and II

Plaintiff argues that the trial court erred by granting summary judgment in favor of defendant where there were genuine issues of material fact surrounding his REDA claim and corresponding wrongful discharge claim.

"The North Carolina [REDA] prohibits discrimination or retaliation against an employee for filing a worker's compensation claim." *Wiley v. UPS, Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004) (citation omitted). North Carolina General Statutes, section 95-241(a)(1)(a), provides that

> [n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to do any of the following: (1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to any of the following: a. Chapter 97 of the General Statutes [(Workers' Compensation Act)].

N.C. Gen. Stat. § 95-241(a)(1)(a) (2011) (emphasis added). "[A] plaintiff may pursue both a statutory claim under REDA and a common law wrongful discharge claim based on a violation of REDA." *White v. Cochran*, — N.C. App. —, —, 716 S.E.2d 420, 426 (2011).

In bringing a REDA claim, a plaintiff "may either proceed using direct evidence or may rely on inferential proof" under a burden-shifting scheme. *Lilly v. Mastec N. Am., Inc.*, 302 F. Supp. 2d 471, 481 (M.D.N.C. 2004). "Under the burden-shifting model, plaintiff must first establish a *prima facie case*." *Id*. To accomplish this, plaintiff must show: "(1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a)." *Wiley*, 164 N.C. App. at 186, 594 S.E.2d at 811. If plaintiff presents a *prima facie* case, the burden shifts to the defendant to "show that

there was a valid reason for any actions it took regarding him." *Lilly*, 302 F. Supp. 2d at 481 (citations omitted). Once defendant meets this burden, "plaintiff then has to demonstrate that the apparently valid reason was actually a pretext for discrimination." *Id.*

Plaintiff contends he was clearly engaged in a protected activity pursuant to N.C.G.S. § 95-241(a) when he notified Tony Cuomo, defendant's director of operations who oversaw plaintiff's training, that "he may intend to file a claim for workers' compensation."

Defendant, on the other hand, relying on *Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 618 S.E.2d 750 (2005), asserts that the action of *filing* a workers' compensation claim is the activity that triggers REDA protection. Defendant argues that plaintiff's statements do no more than forecast a potential action and do not by themselves warrant REDA protection. Defendant's reliance is misplaced. In *Whitings*, our Court held that the plaintiff's request that her employer pay for a medical evaluation of a work-related injury did not constitute a protected activity under REDA. We also concluded that because the plaintiff failed "to allege the filing of a workers' compensation claim *at any time* either prior or subsequent to her discharge, [the] plaintiff ha[d] failed to plead that she engaged in a legally protected activity." *Id.* at 223, 618 S.E.2d at 754.

In the instant case, plaintiff stated in his affidavit that he notified Cuomo of his work-related injury on 2 February 2010; told Cuomo that "before reporting the injury to workers' compensation I wanted to make sure it was not simply a pulled muscle that would go away[;]" and informed Cuomo that he would "file the appropriate paperwork to initiate a claim once I confirm the nature of the injury." On 3 February 2010, plaintiff received a first and final written warning from defendant; and on 7 February 2010, defendant terminated plaintiff stating "Lack of Demonstrated Leadership" as the reason. Five days after being terminated by defendant, plaintiff filed a worker's compensation claim.

Viewing the evidence in the light most favorable to plaintiff and taking all of his factual allegations as true, we hold the allegations are sufficient to support the first two elements of a *prima facie* case: that plaintiff engaged in a protected activity pursuant to N.C.G.S. § 95-241(a) by threatening to file a workers' compensation claim; and that he suffered from the adverse employment action of termination.

To satisfy the third prong in establishing a *prima facie* case, "a plaintiff may present evidence of close temporal proximity between

the protected activity and the adverse employment action, or a pattern of conduct." *Smith v. Computer Task Group, Inc.*, 568 F. Supp. 2d 603, 614 (M.D.N.C. 2008) (citation omitted); *see also Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 682, 535 S.E.2d 357, 361 (2000). "[M]erely a closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient to make a *prima facie* case of causality." *Shoaf v. Kimberly-Clark Corp*, 294 F. Supp. 2d 746, 756 (M.D.N.C. 2003). Here, plaintiff demonstrated that he was terminated from employment five days after informing defendant of his work-related injury and of his intention to file a worker's compensation claim, thereby fulfilling the last element of his *prima facie* case.

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *N.C. Dept. of Correction v. Gibson*, 308 N.C. 131, 138, 301 S.E.2d 78, 83 (1983) (citation omitted). Once a plaintiff establishes a *prima facie* case of discrimination, "the employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." *Id.* (citation omitted).

Defendant's President and Chief Operating Officer Glenn McFarland, stated in his affidavit that shortly after plaintiff began training on 18 January 2010, McFarland observed plaintiff's poor job performance. During the week of 25 January 2010, McFarland, defendant's district manager—Jenny Meyer, and defendant's regional operations manager—Mark Caney, all communicated about plaintiff's performance deficiencies. Specifically, they addressed "his fatigue and constant yawning throughout training[,]" and poor phone answering skills. Meyer stated in her affidavit that during training, defendant was difficult to train, appeared tired and fatigued throughout training, was not assertive at the front desk, and failed to understand cleanliness standards taught during training. Meyer stated that her concerns about defendant's performance began on the first day he trained with her, 25 January 2010. During the first week of training, Meyer, McFarland, and Caney agreed to issue defendant a written Corrective Action and planned on issuing it on 3 February 2010.

Defendant's written warning to plaintiff explained that plaintiff had been late for work on several occasions, had been taking an excessive number of breaks from work each day, failed to demonstrate that he had learned defendant's workplace standards, and that plaintiff's lack of leadership was a concern to defendant. In plaintiff's

termination letter, defendant stated that plaintiff's lack of demonstrated leadership, reflected through his tardiness during training, lack of demonstrated initiative, dealings with challenging customers, phone skills, and inability to embrace defendant's concepts versus trying to incorporate aspects of full service hotels, were the reason supporting plaintiff's termination.

Based on the foregoing, defendant has demonstrated several legitimate, non-retaliatory grounds for plaintiff's termination. This is sufficient to successfully rebut plaintiff's *prima facie* case. "Plaintiff now bears the burden of proving that [d]efendant's proffered reason was mere pretext for retaliation by showing 'both that the reason was false and that discrimination was the real reason' for the challenged conduct." *Shoaf*, 294 F. Supp. 2d at 757-58 (citation omitted) (stating that plaintiff "cannot rely on temporal proximity alone to establish pretext.").

In determining the suitability of summary judgment in this type of case, our United States Supreme Court has stated the following:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-49, 147 L. Ed. 2d 105, 120-21 (2000). "[I]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Enoch v. Alamance County Dep't of Soc. Servs.*, 164 N.C. App. 233, 242, 595 S.E.2d 744, 752 (2004) (citing *Reeves*, 530 U.S. at 147, 147 L. Ed. 2d at 119).

In the present case, plaintiff asserts that he can establish pretext through circumstantial evidence and temporal proximity. Plaintiff was terminated five days after reporting his work-related injury to Cuomo. Plaintiff argues he was given a first and final written warning on 3 February 2010, one day after he informed defendant of his injury; that he was given permission to sit down, but was terminated in part for sitting down; that on 3 February 2010, after speaking with another manager-in-training, plaintiff believed his paycheck was withheld while other managers were paid; that defendant did not offer to provide treatment for plaintiff's injury; and that after plaintiff's termina-

tion, defendant posted online an open position for property manager that had an additional job requirement of the ability to perform housekeeping functions. Moreover, plaintiff argues that all the paperwork relating to plaintiff's poor performance was generated after plaintiff reported his injury and made a threat to file a workers' compensation claim. Plaintiff contends that the foregoing evidence creates genuine issues of material fact regarding pretext.

With the exception of plaintiff's argument that all paperwork relating to plaintiff's poor performance was generated subsequent to plaintiff's report of his injury and threat to file a workers' compensation claim, none of plaintiff's circumstantial evidence establishes that defendant's stated grounds for plaintiff's termination were false. Further, plaintiff does not address defendant's explanation for why defendant fired him. As to plaintiff's evidence concerning the absence of documented evidence predating his injury report, affidavits from defendant's employees indicate their observations of and discussions surrounding plaintiff's poor job performance, which poor performance was noted at the very beginning of his training and throughout his employment.

We note that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action. It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Shoaf*, 294 F. Supp. 2d at 758 (quotations and citations omitted). "Even in discrimination cases where motive and intent are critical to the analysis, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation." *Id.* at 759 (citation and internal quotations omitted).

Here, plaintiff relies on weak inferences and unsupported speculation; plaintiff is unable to overcome defendant's evidence that it was plaintiff's poor, deficient job performance that led to his termination. While plaintiff attempts to meet his burden with conclusory allegations, he does not establish that defendant's stated reason for termination was false or a pretext for illegal discrimination.

Viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact with respect to the pretext issue. *See Enoch*, 164 N.C. App. at 243, 595 S.E.2d at 752 ("[I]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." (citation omitted)).

Accordingly, we affirm the trial court's order granting summary judgment in favor of defendant

Affirmed.

Judges HUNTER, JR., Robert N. and BEASLEY concur.